CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 24 2020

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TIMOTHY S., | ) |
| Plaintiff | ) |
| v. | ) Civil Action No. 7:19-CV-29 |
| ANDREW SAUL, Commissioner of Social Security, | ) |
| | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on February 27, 2020, ECF No. 20, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Timothy S. ("Timothy") has filed objections to the R&R and this matter is now ripe for the court's consideration. For the reasons discussed below, the court **REJECTS** the R&R in part and **REMANDS** Timothy's case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

## I. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir.); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

3

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a

4

conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

### III. Plaintiff's Objections[2]

Timothy filed for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI") on January 26, 2015. R. 84, 95.[3] He alleged an onset date of January 1, 2013. The ALJ found that for purposes of DIB, his last insured date was June 30, 2016, and determined that he was not disabled prior to that date.

On November 1, 2017, Timothy's age category changed, and he became "an individual of advanced age." R. 40 (citing 20 C.F.R. §§ 404.1563 and 416.963). Once he became an individual of advanced age, a finding of "disabled" was directed by application of Medical-Vocational Rule 202.06 and the ALJ found him disabled as of that date.

Timothy avers that he also was disabled prior to June 30, 2016, and in particular, makes the following objections to the magistrate judge's R&R: (1) the magistrate judge erred when he concluded that the ALJ's assessment of Timothy's mental impairments is supported by substantial evidence; (2) the magistrate judge erred when he concluded that the ALJ's assessment of Timothy's physical impairments is supported by substantial evidence; and (3) the magistrate judge erred when he found that the ALJ properly assessed Timothy's subjective complaints.

---

[2] Detailed facts about Timothy's impairments and medical and procedural history can be found in the R&R (ECF No. 20) and in the administrative transcript (ECF No. 7) and will not be repeated here.
[3] Although some documents indicate that Timothy filed for benefits on March 3, 2015, R. 176, 183, 207-219, the Social Security Administration indicates that he filed his initial claims on January 26, 2015. R. 84, 95.

5

## A. Assessment of Mental Impairments

In assessing Timothy's mental impairments for the relevant period, the ALJ found that he had been diagnosed with bipolar disorder, depression, major depressive disorder, a mood disorder, anxiety disorder, borderline personality disorder, post-traumatic stress disorder, unspecified schizophrenia, and alcohol and cannabis use disorders since his alleged onset date. R. 33. She also noted that he had repeatedly undergone psychiatric and psychological in- and out-patient treatment since his onset date. Id. Treatment notes indicated that he complained of and demonstrated significant problems with aggressive behavior and managing his anger. He also repeatedly complained of problems with his mood, poor sleep, hallucinations, and suicidal behaviors. Id. The ALJ further noted that the times he experienced significant symptoms were associated with periods of non-compliance with treatment and that he often had normal mental status findings after restarting treatment or being placed in a therapeutic environment. Id.

At the hearing on July 1, 2017, Timothy testified that he was homeless and living in a shelter. R. 58-59. He had previously worked as an electrician, but had not been able to work since 2013 because of his physical and psychological problems. R. 62. He had last been hospitalized for mental health issues the previous summer. When he feels like he is not being treated fairly he gets upset. R. 66. He runs out of patience and becomes angry. He will try and walk it off when he can, but does not always have that opportunity. He reacts in anger when he thinks he is being disrespected or belittled. R. 67. He has racing thoughts, and when he is depressed, he shuts down. R. 72. He has trouble concentrating and has trouble sleeping because of nightmares. R. 73. He has had many fights in the workplace. R. 74. He has anxiety

6

when he is around other people and it manifests as tightness in his lungs and an inability to breathe. R. 74. He also has a history of hallucinations and had last experienced auditory hallucinations a few months previously. R. 75.

In assessing Timothy's residual functional capacity ("RFC"), the ALJ found that he could do light work with additional physical limitations and that he could have no contact with the general public and no tandem work assignments with coworkers. R. 37. She included those mental capacity limitations in her hypothetical question to the vocational expert, who testified that Timothy could do the work of a marker, a router (similar to a mail clerk), and a maid. R. 79.

The ALJ found that while Timothy had episodes when his mental symptoms were exacerbated, they improved with treatment and if his symptoms were as severe as he alleged, they would have been consistently evident on examination, required more aggressive treatment, or been more resistant to treatment. R. 38. The ALJ also found that Timothy's activities of daily living, such as working as an electrician after his alleged onset date, shopping, managing his finances, and functioning independently in public settings, were inconsistent with the alleged limiting effects of his impairments. R. 38. The ALJ stated that she accounted for his mental impairments by limiting the frequency and scope of his interactions with others.

The magistrate judge found that the ALJ's opinion included a narrative discussion and contained sufficient information to allow for meaningful review. The magistrate judge further found that the ALJ built a logical bridge between the evidence and her RFC determination and thus satisfied her responsibilities. Finally, the magistrate judge found that Timothy was asking the court to re-weigh the evidence, which it cannot do.

Upon de novo review, the court arrives at a different conclusion. The court is mindful that it cannot reweigh the evidence or substitute its judgment for that of the Commissioner, but nevertheless finds that the ALJ's determination that Timothy could work prior to June 30, 2016, his date last insured, is not supported by substantial evidence in the record.

When evaluating the severity of mental impairments, the ALJ uses a special technique, first evaluating the pertinent symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable impairment and then rating the degree of functional limitation. 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

In rating the degree of functional limitation, the ALJ must consider all relevant and available clinical signs and laboratory findings, the effects of symptoms, and how a claimant's functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment. 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1). The ALJ looks at the extent to which the impairments interfere with a claimant's ability to function independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. §§ 404.1520a(c)(2), 404.960(a)(c)(2). The ALJ considers the quality and level of a claimant's overall functional performance, any episodic limitations, the amount of supervision or assistance he requires, and the settings in which he is able to function. Id.

The ALJ stated that Timothy's symptoms improved with treatment and that if they were as severe as alleged, they would have been consistently evident on examination, required more aggressive treatment, or been more resistant to treatment. However, the record does not reflect that Timothy's symptoms improved for an appreciable length of time with treatment during the relevant time period.

Timothy was hospitalized at Western State Hospital in February 2016, prior to his date last insured, after he had threatened to kill a doctor in an emergency room for prescribing a medication that Timothy believed caused hallucinations. Timothy had become paranoid and believed that a decorative snowman was trying to kill him. His daughter described him as homeless and hallucinating. He complained of low mood and impaired concentration. R. 546.

Although he was stabilized and discharged two days later, R. 544, he was readmitted to Horizon Behavioral Health ("Horizon") in late June 2016 for crisis stabilization. R. 615. At that time, he was renting a room in a rooming house. R. 625. Before being admitted to Horizon, he had presented to Centra Lynchburg General Hospital ("Centra"), complaining of depression and PTSD. R. 671. He refused to answer when asked if he was suicidal. R. 672. He reported becoming increasingly unstable and said he had two daughters to put through college. R. 674. He became teary when explaining his symptoms and problems with depression. Id.

After admission, he was described as having a flat affect and reported feeling depressed. He had limited appetite, difficulty sleeping, racing thoughts, difficulty concentrating, flashbacks, intrusive memories, isolation, anhedonia, difficulty with interpersonal relationships and suicidal ideation, but no plans to commit suicide. R. 615. It was believed that he was delusional, but that was hard to corroborate. R. 617. Timothy left Horizon three days later against medical advice. R. 593.

In August 2016 he returned to Horizon and was described as "grandiose [and] entitled." Id. He stated that he needed to get back to work because he needed to pay child support, but also said that his children were "all over the world" and that he had no contact with them and no child support to pay. He reported being homeless. Id. He was admitted to Horizon on

9

August 5, 2016 and discharged the next day because he was unable to comply with the rules and expectations of the program. He was disrespectful to the staff and clients, engaged in bullying behaviors, and displayed a strong sense of entitlement. R. 591.

On August 7, 2016 he returned to Centra and said that he could not stop thinking about suicide and had wanted to jump off a bridge the day before. R. 638. He was recommended for inpatient care. R. 643. He was admitted to Poplar Springs Hospital the same day. On August 19, 2016, he was released from the hospital and it was noted that his mood symptoms were improved and toward the latter part of his stay he was calm, cooperative, and able to contract for safety. R. 780-781.

In March 2017 he was seen at Piedmont Community Services and said he continued to be very anxious and depressed. His medications were not sufficiently effective to control his symptoms and he continued to feel despondent and anxious. He showed the typical heightened startle response and obsessional memories and associated dysphoric affect typical of combat related PTSD. R. 726.

Based on the foregoing, substantial evidence does not support a finding that Timothy was stabilized after in-patient treatment. Instead, the record shows that he was in and out of mental health facilities during the relevant time period. While he may have experienced a period of stability after his release from Western State Hospital in February 2016, he was described as needing crisis care by June 2016, admitted for in-patient care, and left against medical advice after three days. And although he improved after receiving inpatient care at Poplar Springs Hospital in August 2016, by March 2017 he reported feeling despondent, anxious, and depressed.

Moreover, even if he experienced a period of stability while receiving in-patient treatment and for a period thereafter, a controlled, focused environment of a visit with a treating healthcare provider provides limited insight into a claimant's ability to interact with others outside such a setting, and particularly in a competitive workplace. Holloway v. Berryhill, No. 4:17-CV-94-FL, 2018 WL 4126629, *10 (E.D.N.C. 2018). "[S]uch intermittent examinations are inherently limited in their ability to assess chronic mental impairments whose manifestation may be episodic and situational." Id. (citing Punzio v. Astrue, 630 F.3d 704, 710 (7th Cir. 2011)). See also Schink v. Comm'r of Social Security, 935 F.3d 1245, 1267 (11th Cir. 2019) (noting that people with chronic diseases can experience good and bad days, and when bad days are extremely bad and occur with some frequency, they can have a severe effect on a person's ability to work).

The ALJ also noted that Timothy had returned to work as an electrician briefly in February 2016 and that he had stopped that job because of issues with his hands. R. 36. She found that his ability to perform skilled work despite his mental condition suggested that he could understand, remember, and apply information, and maintain concentration, persistence, and pace for complex projects. R. 36.

However, Timothy testified at the hearing that he had been unable to maintain steady employment since 2013 because of physical and psychological issues. R. 62. In addition, he did not say that he worked in early 2016 and the ALJ's question to him referred to various places he had worked in 2013, 2014, and 2015. R. 62. Timothy's earnings record shows that he was hired in November 2015 at a construction company, but there are no earnings reported for the first quarter of 2016. R. 220, 231. Also, it was in February 2016 when Timothy was

11

hospitalized at Western State Hospital after threatening kill a doctor over a medication prescription. Thus, the ALJ's finding that Timothy returned to work briefly in 2016 and left because of his physical impairments is not supported by substantial evidence. In turn, her determination, based on the finding that he had returned to work in 2016, that Timothy could understand, remember, and apply information, and maintain concentration, persistence, and pace for complex projects, also is not supported by substantial evidence.

The ALJ further found that Timothy's allegations were undermined by his daily activities, and that he had reported that he could perform many activities of daily living, such as managing his finances and shopping. However, this conclusion is not supported by substantial evidence. For at least the early part of 2016, prior to his date last insured, Timothy was homeless, which does not support a finding that he could manage finances or shop. Also, at the hearing in July 2017 he said he had been living in a homeless shelter for the previous four months and had stayed in a shelter for a month at some point previously. R. 58. He did not drive because of multiple convictions for driving while intoxicated and walked where he needed to go. R. 58-59. He spent most of his time by himself to avoid interacting with people. R. 68.

Moreover, even if Timothy were able to manage his finances and shop, it is unclear how these skills translate to being able to maintain employment. In Brown v. Comm'r Soc. Sec., 873 F.3d 251, 269 (4th Cir. 2017), the Fourth Circuit remanded a case in part because the ALJ listed a claimant's daily activities of cooking, driving, doing laundry, collecting coins, attending church, and shopping, but did not acknowledge the limited extent of the activities or explain how the activities showed he could sustain a full-time job. See also Clifford v. Apfel,

227 F.3d 863, 872 (7th Cir. 2000)) (observing that it is not enough for an ALJ to state in a conclusory manner that a claimant's testimony regarding limitations placed on his daily activities was unsupported by the medical evidence; rather, an ALJ must articulate "some legitimate reason for his decision" and "build an accurate and logical bridge from the evidence to his conclusion.") In this case, the ALJ did not acknowledge that any financial management or shopping by Timothy was done in the context of his being homeless and she did not explain how those skills indicated that he could perform full-time employment, even with the limitations she set forth in the RFC.

Based on the foregoing, the court finds that the ALJ's assessment of Timothy's mental health issues and her assessment of his RFC are not supported by substantial evidence. Accordingly, the court **SUSTAINS** Timothy's objection to the finding in the R&R that the ALJ's decision was supported by substantial evidence and **REMANDS** for further consideration consistent with this opinion.

### B. Remaining Objections

Timothy also objects that the magistrate judge erred when he found that the ALJ properly assessed his physical impairments because she included the narrative required by SSR 96-8p and built the necessary bridge from the evidence to her conclusions. He further objects that the ALJ did not properly assess his subjective complaints. However, because the court is remanding his case, it does not find it necessary to address these objections. Upon remand, the Commissioner should also consider Timothy's remaining allegations of error. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

## CONCLUSION

For the reasons stated, the court finds that the magistrate judge erred in finding that substantial evidence supported the ALJ's assessment of Timothy's mental impairment from the date of onset through his date last insured as well as her assessment that Timothy could do light work with additional physical limitations as long as he does not have contact with the public or work in tandem with another employee. As such, the court **REJECTS** the magistrate judge's report and recommendation and **REMANDS** this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: 03-24-2020

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge